■ In the Matter of Robert F. Rychlick, Respondent, v Thomas A. Coughlin, III, as Commissioner of the Department of Correctional Services, Appellant. — Appeal from a judgment of the Supreme Court at Special Term (Swartwood, J.), entered March 7, 1983 in Chemung County, which granted petitioner's application, in a proceeding pursuant to CPLR article 78, to, *inter alia,* compel respondent to reinstate petitioner to the position of correction officer. The instant proceeding arose out of an incident which occurred at Elmira Correctional Facility, where petitioner was employed as a correction officer. On January 14, 1979, he and another officer were moving inmates into an exercise yard. An altercation arose between the second officer and an inmate. Petitioner allegedly failed to assist the officer in subduing the inmate and other guards had to be called upon to do so. Following this incident, several correction officers, dissatisfied with petitioner's conduct, filed charges against him with the superintendent. Petitioner heard of these charges and went to his union steward for advice. However, he declined the steward's recommendation that petitioner resign and then apply for reinstatement. On January 17, 1979,

upon reporting for duty, petitioner was told to go to the office of W. S. Kirk, a deputy superintendent of the facility. Petitioner was accompanied by Correction Officer Dean, president of his union local, who appeared as his union representative. At the deputy superintendent's office, petitioner was informed of the charges which had been filed against him by other correction officers and was told that, for his own safety, he would not be allowed to go on duty. Kirk then offered petitioner the alternative of resigning or of having formal disciplinary charges filed against him. Petitioner was further informed that if he resigned, he could later apply for reinstatement. However, no assurances were given as to what the response to such an application would be. Petitioner was then left alone to confer with Officer Dean. Dean informed petitioner that he need not make a decision immediately as arbitration proceedings concerning the charges to be filed would not be commenced for at least 10 days. He further informed petitioner of his right to a hearing on the charges. Following this discussion, petitioner asked for an opportunity to see an attorney. He was told that consulting an attorney would not change Superintendent Kirk's decision to file charges unless he resigned at that time. Petitioner then signed a letter of resignation. The entire process took less than an hour. Four days later, petitioner wrote the Department of Correctional Services, asking that his resignation be withdrawn on the ground that he had been forced to resign. His request was denied and the instant CPLR article 78 proceeding ensued. Special Term subsequently granted the petition and ordered petitioner's reinstatement with back pay on the ground that his resignation was not voluntary. This appeal by the Department of Correctional Services ensued. We reverse. The facts as found by Special Term do not support the inference that petitioner's resignation was the product of coercion or duress. First, it is clear that the deputy superintendent's threat to file formal charges against petitioner if he did not resign does not constitute duress. Kirk had the legal right, if not the duty, to press these charges, and it has consistently been held that a threat to do that which one has the legal right to do does not constitute duress (*Matter of Cacchioli v Hoberman*, 31 NY2d 287, 292; *Gerstein v 532 Broad Hollow Rd. Co.*, 75 AD2d 292, 297). Significantly, Special Term rejected petitioner's assertion that implied threats of physical violence were used when a fear for his physical safety was expressed in the event of his return to work that day. Absent here was the lengthy questioning, curtailment of physical freedom, or any other oppressive treatment and infringement of rights found critical in *Matter of Willis v Von Holden* (67 AD2d 810). It is further noteworthy that petitioner knew of the charges against him three days before the meeting in question where he was again informed of them. In all of the foregoing respects, the instant case is similar to *Matter of De Marco v McLaughlin* (69 AD2d 882, affd 49 NY2d 941). There a police officer was also given the immediate choice of resignation or facing formal charges of misconduct. The petitioner in *De Marco* chose resignation and this choice was held to be voluntary despite the fact that at the time it was made, the petitioner was severely depressed and being medicated with tranquilizers and sedatives, he had not been informed of his right to a hearing on the charges, and he was told that if he did not agree to resign within one hour, the press would be informed of all the charges against him. The circumstances surrounding petitioner's resignation in the instant matter were obviously far less oppressive than those found not to constitute coercion in *De Marco*. Special Term placed particular emphasis on the fact that petitioner's resignation must be deemed involuntary because the procedure used to obtain it did not conform to that set forth in the collective bargaining agreement. In support of its position, Special Term cited *Matter of Miller v Coughlin* (87 AD2d 593), which has since been reversed by the Court of Appeals (59 NY2d 490), for the standard of voluntariness necessary to waive

collective bargaining rights. While it is true that the agreement requires certain steps to be taken in the instigation and settlement of a "disciplinary grievance", i.e., written notice of the charges, an opportunity to consult with an attorney or a union representative, and a written memorandum of a settlement, it is questionable whether those provisions apply where, as here, no formal disciplinary proceeding was ever instituted against petitioner. In any event, noncompliance with the formalities set forth in the union contract does not mandate vitiating the resignation (see *Matter of Miller v Coughlin,* 59 NY2d 490, *supra*). Moreover, it can be said that there was both substantial compliance with these contractual requirements and also conformity with the dictates of due process here in that petitioner received advance notice of the charges, was represented by his union leader, and the settlement was set down in writing in petitioner's signed resignation (see *Matter of Miller v Coughlin, supra*). Finally, we reject petitioner's argument that respondent's refusal to reinstate him was arbitrary and capricious. Petitioner's performance on the job had been rated as "marginal" by his superior officer before the incident in question. A further review of petitioner's conduct noted that he had "a tendency to falter when faced with any danger". Given the conditions which exist in a maximum security correctional facility such as that in which petitioner was employed, it would scarcely seem an abuse of discretion to refuse to reinstate him following an incident such as the one in question (see *Matter of Bloomer v Kirwan,* 36 AD2d 775). Judgment reversed, on the law and the facts, and petition dismissed, without costs. Kane, J. P., Main, Yesawich, Jr., Weiss and Levine, JJ., concur.